**CONSOLIDATED LABORATORIES,
INC., a corporation, Plaintiff-
Appellant,**

v.

**SHANDON SCIENTIFIC COMPANY,
Ltd., a corporation, Shandon Scientific
Company, Inc., a corporation, Shandon
Scientific Industries, Ltd., a corporation, Ernest R. Shandon, and George D.
Welch, Defendants-Appellees.**

**No. 17326.**

United States Court of Appeals
Seventh Circuit.

July 2, 1969.

1. (1964), 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723.

Patrick W. O'Brien, George Bobrinskoy, Jr., Chicago, Ill., for appellant.

Laurens G. Hastings, David P. List, Henry Mason, III, Chicago, Ill., for appellee.

Before HASTINGS, Senior Circuit Judge, and KILEY and SWYGERT, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Plaintiff, Consolidated Laboratories, Inc. (Consolidated), appeals from a summary judgment of dismissal entered by the district court for the defendants, Shandon Scientific Company, Ltd., Shandon Scientific Industries, Ltd. (Shandon of London)[1], Shandon Scientific Company, Inc. (Shandon of Pennsylvania), corporations, and Ernest R. Shandon, and George D. Welch. We shall summarize the facts relevant to this appeal[2].

Consolidated instituted this diversity action charging that Shandon of London breached its contract with Consolidated and that Shandon of Pennsylvania and its president, George Welch, and Ernest Shandon unlawfully and maliciously induced such breach of contract. Consolidated sought an injunction and damages.

The record reveals that Shandon of London is an English manufacturer of scientific products for biological and biochemical laboratories. Beginning in the final quarter of 1950, Consolidated became the sole distributor for Shandon scientific equipment in the United States. After negotiations, Consolidated and Shandon of London formalized this relationship by executing a written contract on May 15, 1963, which provided that Consolidated would have "exclusive rights to market" certain Shandon products in the United States and in specified Territories for a period of five years.

It is evident there was economic dissatisfaction with the business relationship established under the 1963 agreement. The precise reasons for the dissatisfaction appear to be in dispute.

1. During December, 1965, Shandon Scientific Company, Ltd. changed its name to Shandon Scientific Industries, Ltd. Thus, the two corporate names refer to one and the same corporate entity.

2. The apposite facts are not foreign to us as this case has been before this panel in a different context on an earlier occasion. See Consolidated Laboratories, Inc. v. Shandon Scientific Co., 7 Cir., 384 F.2d 797 (1967).

An affidavit filed by Ernest R. Shandon states that he met with Dr. George H. Scherr, Vice-President and Chairman of the Board of Directors of Consolidated, on June 28, 1965, at Consolidated's Illinois office. Shandon states that during this meeting he discussed with Scherr the possibility of canceling their 1963 contract due to Consolidated's failure to perform in accordance with the terms of that contract. The discussion allegedly focused on Consolidated's failure to meet the terms of payment [3], failure to adequately promote and advertise Shandon's products and failure to maintain an adequate rate of growth in sales.

By affidavit, Dr. Scherr states that he had occasion to meet with Ernest Shandon on May 12, 1964, and on June 28, 1965. At the May, 1964 conference, discussion concerned resolving "three significant problems" which had arisen under the 1963 agreement: restyling Shandon products to suit the demands of the American market, reducing the time lag between Consolidated orders and delivery by Shandon of London and improving the allocation of credit burden between the parties. At the June, 1965 meeting, affiant states that Ernest Shandon voiced dissatifaction at the rate of growth in Shandon sales but expressly stated that he could not "find fault with the efforts and performance of Consolidated in promoting the sale of Shandon Products * * *", and that there was no threat of canceling the 1963 agreement.

The record further reveals that on September 23, 1965, a meeting took place in London between Dr. Scherr and Shandon of London's board of directors. As a result of this conference, the parties mutually agreed to terminate the 1963 contract and did so by a written memorandum which in relevant part reads:

"Memorandum that it has been agreed between the undersigned Shandon Scientific Co., Ltd., and Consolidated Laboratories Inc., as follows:

(1) The Memorandum of Agreement made between us dated 1st May 1963 shall be and is hereby terminated by mutual consent in consideration of the exchange of the attached letter of intent dated the 27th September, 1965.

(2) Each party hereby agrees and acknowledges that it has no outstanding claim against the other except in respect of goods supplied."

The "letter of intent" referred to by the parties in the memorandum of cancellation redefined the Consolidated-Shandon of London contractual relationship and in relevant part reads:

"We hereby confirm that from today's date, until the appointment of a new main distributor in the United States, we shall continue to supply you with those Shandon products scheduled in the Agreement dated the 1st May, 1963, at current prices directly from London.

"Payment terms to be as follows:— 90 days documents against por aval acceptance by a U.S.A. bank.

"We also confirm that we will ensure that on appointment of a new main distributor you will be assured a main dealership for Shandon products at most favoured terms under an agreement to be negotiated between yourselves and the new main distributor. It is intended that the latter will only supply a small number of major dealers, of which you would be one, and will not deal directly with users.

"Consolidated Laboratories have the prerogative to sell back to Shandon Scientific Co. Ltd. those stocks which they do not require at the date of appointment of the new main distributor. Consolidated Laboratories intentions in this matter will be communicated by them to Shandon Scien-

---

3. As of September 23, 1965, Consolidated owed Shandon of London approximately $50,000 for goods sold and delivered.

tific Co. Ltd. so that the physical disposal can be organised. The stocks will be sold to Shandons at cost price plus duty."

Under this new relationship, the parties contemplated that Shandon of London would appoint a new main distributor for the United States and that until such appointment Shandon of London would continue to sell products to Consolidated at current prices under payment terms of "90 days documents against por aval acceptance by a U.S.A. bank." The parties further agreed that the new main distributor would sell only to a small number of major dealers and would not sell directly to the public. The agreement expressly assured Consolidated of a main dealership at "most favoured terms."

It is undisputed that Shandon of London did not appoint a new main distributor, but rather in May, 1966 it organized Shandon of Pennsylvania, advertised as an American subsidiary of Shandon of London, to "sell and distribute, at wholesale and retail", Shandon products. Ernest Shandon is principal shareholder in Shandon of Pennsylvania while George Welch, a 10 per cent shareholder, serves as its president. Shortly after incorporation, the Pennsylvania Company solicited retail sales for Shandon products by advertising in various scientific journals and by direct mailings.

On August 8, 1966, Shandon of London advised Consolidated by letter that it was terminating Consolidated's direct import franchise for the following reasons:

"1. A direct import franchise must of necessity be based not only on the maintenance of a balanced inventory, but also on an active promotion of our products by direct mail, press advertising in the leading scientific journals and the employment of adequately trained and maintained sales force.

"2. You have no up-to-date printed price list of our products available which would be a prerequisite to ef-

ficient marketing, neither does there appear to be up-to-date sales literature available.

"3. The average monthly value of the orders you have placed with London during the six months from the 1st January, 1966, to the 30th June, 1966, when the whole of the vast American market was open to you, has dropped from about £2,500 per month in 1965 to about £500 per month in 1966 which in our view can only be due to your complete neglect to promote sales of our products.

"4. The low volume of business and the small value of orders makes it an uneconomical proposition to effect direct shipment to the States.

"5. The stipulated terms of 90 days por aval Bills of Exchange have never been complied with."

Based essentially on these facts, plaintiff instituted this action and defendant moved for summary judgment.

The district court granted defendant's motion after examining the briefs, affidavits, counter-affidavits and exhibits proffered by the parties. From these materials, the trial court concluded that the 1965 contract between Consolidated and Shandon of London, as set forth in the memorandum of cancellation and in the letter of intent, was "indefinite in duration and lacking in mutuality of obligation" and therefore "was terminable at will as a matter of law and was in fact properly terminated." The trial court further found that Consolidated was in substantial breach of the 1965 agreement due to its failure to comply with the contract's payment terms "that goods ordered be paid for by por aval." We disagree.

 First, as a matter of law, we are not convinced that the agreement between the parties in the instant case is indefinite as to duration and thus terminable at will. It is clear that under Illinois law a contract which fails to fix a time for its duration and calls for continual performance is ordinarily terminable at the will of either. It is equal-

ly true, however, that a contract which is terminable upon the occurrence of an event is not terminable at will but is, as Consolidated contends, "to be enforced according to its terms and the reasonable implication thereof." Donahue v. Rockford Showcase & Fixture Co., 87 Ill.App.2d 47, 230 N.E.2d 278 (1967); Galler v. Galler, 32 Ill.2d 16, 203 N.E.2d 577, 586 (1964); W. P. Iverson & Co. v. Dunham Manufacturing Co., 18 Ill.App. 2d 404, 152 N.E.2d 615, 620 (1958); Stein v. Isse Koch & Co., Chicago, Inc., 350 Ill.App. 171, 112 N.E.2d 491, 493 (1953). I.L.P. Contracts § 291 (1955). Here it is abundantly clear that the agreement was to continue in effect until Shandon of London appoints a new main distributor and Consolidated becomes a main dealer of Shandon products as assured in the 1965 letter agreement. The contract is not for an indefinite period of time, but rather it is terminable upon the occurrence of the two specified events, both of which are in the sole control of Shandon of London.

■ Defendants also contend that the appointment of the new distributor became "impractical". Consolidated is quite correct in pointing out that "nothing in the Record discloses what events, if any, occurred * * *, which would suddenly render the letter agreement 'impractical' to perform." Mere unanticipated difficulty, inconvenience, unexpected expense, loss, or improvidence will not excuse failure to perform a contract according to its terms. Here, the defendants have not adduced evidence that the performance of this contract was "impractical" or impossible to perform. Levy v. Rosen, 300 Ill.App. 523, 21 N.E.2d 653 (1939) and cases cited therein. I.L.P. Contracts §§ 381–382 (1955).

■ Defendants also argue to the effect that *if* the appointment of the new distributor becomes impractical Shandon of London will be held to perform "over an indefinite and possibly perpetual period" and that "it was never the purpose of the agreement to [so] commit Shandon * * *." As noted, no show-ing of impossibility of performance has been made. Absent such a showing, we are of the view that a reasonable and fair reading of the contract provisions does not commit Shandon of London to a situation of perpetually supplying Consolidated. Rather, we are led to the conclusion that Shandon of London is committed to Consolidated only for such time as is reasonably necessary for Shandon to establish the new main distributor and for Consolidated to become a main dealer.

■ With respect to the district court's finding of no mutuality of obligation, we are not persuaded that the absence of mutuality of obligation necessarily results in a contract which is terminable at will. As a matter of law, mutuality of obligation is not essential to the validity and enforceability of an agreement where it is otherwise supported by valid consideration. For example, there is no mutuality of obligation in a valid unilateral contract, yet there is an enforceable obligation based upon other consideration. See Crawford v. General Contract Corporation, D.C.W.D. Ark., 174 F.Supp. 283 (1959).

Professor Corbin states that:

"Mutuality of obligation should be used solely to express the idea that each party is under a legal duty to the other; each has made a promise and each is obligor. This is the meaning with which the term is commonly used. There are cases, however, * * [where] even though one of the parties has made no promise and is bound by no duty, the contract has sufficient mutuality if he has given an *executed consideration*. Thus, the validity of a unilateral contract is recognized * * Courts now often say correctly that *it is consideration that is necessary, not mutuality of obligation*." (Emphasis added.) 1A, Corbin, Contracts § 142 at pp. 4–6 (1963).

■ Under applicable Illinois law, lack of mutuality does not necessarily preclude the enforcement of a contract where "there is any other consideration for the contract * * *." Armstrong

Paint & Varnish Works v. Continental Can Co., 301 Ill. 102, 133 N.E. 711, 714 (1921). *Cf.* Air Conditioning Training Corporation v. Majer, 324 Ill.App. 387, 58 N.E.2d 294 (1944).

The gravamen of the defendants' argument is that since Consolidated was not obligated to purchase anything under the 1965 agreement and Shandon of London was under a duty to sell goods for the convenience of Consolidated there was no mutuality of obligation and accordingly the contract is terminable at will. To bolster its contention, defendants cite and rely heavily upon Schoen v. Caterpillar Tractor Co., 103 Ill.App.2d 197, 243 N.E.2d 31 (1968).

■ We find that there was ample consideration to support the 1965 agreement. Namely, Consolidated released or canceled what rights it had under the May, 1963 agreement in return for the promises of Shandon of London as expressed in the 1965 contract. This is unequivocally clear from the language found in the memorandum of cancellation which states that the 1963 agreement is terminated *"in consideration of the exchange of the attached letter of intent * * *."* (Emphasis added.) Further language indicating Consolidated executed consideration for the 1965 contract by terminating its rights under the 1963 agreement may be found in a letter dated October 1, 1965, from Shandon of London to Consolidated's Dr. Scherr. In that communication, Shandon of London stated "we are sure that you will appreciate that should you not sign this document [the Memorandum of Termination] then, of course, *our rights under the original Agreement of the 1st May, 1963, would not be prejudiced."* (Emphasis added.)

This case is distinguishable from the Schoen v. Caterpillar Tractor Co., *supra,* case. In that case, the court found that the plaintiff had incurred no particular detriment and thus did not give consideration, whereas here we find the plaintiff to have given valid and sufficient consideration.

■ Finally, we find from the record as a whole that there is a genuine issue of material fact with respect to the question of whether Consolidated was in substantial breach of contract. The trial court concluded that the plaintiff failed to comply with the por aval payment terms of the 1965 contract. We think there is enough evidence to cast doubt upon that conclusion. As stated in Moutoux v. Gulling Auto Electric, Inc., 7 Cir., 295 F.2d 573, 576 (1961):

"If, upon the proofs adduced in support of a motion for summary judgment, any doubt remains as to the existence of a genuine issue of material fact, such doubt must be resolved against the movant for summary judgment and the motion for summary judgment must be denied."

From the evidence adduced, "it would not be unreasonable to conclude that reasonable minds might arrive at different conclusions" as to whether Consolidated breached the contract or Shandon of London by its words and by its conduct waived its right to por aval acceptance. Here, there is a genuine issue of material fact which precludes the granting of summary judgment. Zahora v. Harnischfeger Corporation, 7 Cir., 404 F.2d 172, 177 (1968).

For the foregoing reasons, the summary judgment of dismissal is reversed and this cause is remanded to the district court for further proceedings not inconsistent with this opinion.

Reversed and remanded