**ST. PAUL FURNITURE MFG. CO., Plaintiff,**

**v.**

**Dale W. BERGMAN, and Brunsport, Inc., Defendants.**

**No. 94–2437–JWL.**

United States District Court, D. Kansas.

Aug. 16, 1996.

Warren N. Williams, Robert D. Hovey, Edward A. McConwell, Jr., Hovey, Williams, Timmons & Collins, Kansas City, MO, for plaintiff St. Paul Furniture Mfg. Co., Inc.

Mark Moedritzer, Shook, Hardy & Bacon L.L.P., Kansas City, MO, William L. Niro, Niro, Scavone, Haller & Niro, Chicago, IL, for defendant Dale W. Bergman.

Mark Moedritzer, Todd Ruskamp, Daniel L. McClain, Shook, Hardy & Bacon L.L.P., Kansas City, MO, William L. Niro, Niro, Scavone, Haller & Niro, Chicago, IL, Daniel C. Jordan, Richmond, VA, for defendant Brunsport Inc.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

This case comes before the court on Defendant Brunsport, Inc.'s motion for summary judgment (Doc. # 51) and on plaintiff's motion for partial summary judgment (Doc. # 53) pursuant to Fed.R.Civ.Pro. 56. On August 12, 1996, the parties presented oral arguments on these motions at the Final Pretrial Conference.[1] For the reasons discussed below, the court grants the plaintiff's motion for partial summary judgment and grants in part and denies in part the Defendant Brunsport's motion for summary judgment.

### II. Facts

The following facts are uncontroverted or are those facts considered in the light most favorable to the respective non-moving party for the purpose of these summary judgment motions. Defendant Brunsport, Inc. (Brunsport) and Plaintiff St. Paul Furniture Mfg. Co. (SPF) both sell gun cabinets. Defendant Dale Bergman is the president and majority shareholder of Brunsport. On April 4, 1991, SPF filed a patent application for a gun cabinet design which includes a top part having glass door panels and a base part having a tambour[2] style, roll-top door. On October 20, 1993, SPF received a patent on that design, United States Patent No. 340,595 (595 Patent).

On November 1, 1994, SPF filed this lawsuit asserting that the Brunsport's Model

---

1. The plaintiff's motion for oral argument (Doc. # 66) is deemed moot as a result.

2. Webster's Third New International Dictionary defines tambour as "a rolling top or front (as of a desk) composed of narrow half-round strips of wood glued on canvas." Webster's Third New International Dictionary 2335 (3d ed. 1986).

4108[3] gun cabinet was a copy of its patented gun cabinet design and, therefore, an infringement on its 595 Patent and violates the plaintiff's trade dress rights under the Lanham Act. The parties agree that SPF's patented gun cabinet is substantially similar to Brunsport's allegedly infringing gun cabinet.

## III. Discussion

### A. Summary Judgment Standard

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir.1995). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.Pro. 56(c); *Anglemyer v. Hamilton*, 58 F.3d 533 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-movant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

### B. Defendant Brunsport's summary judgment motion.

Defendant Brunsport bases its summary judgment motion on three arguments: (1)

SPF's patent is invalid and trade dress rights non-existent because Brunsport sold and publicly displayed its allegedly infringing gun cabinet more than one year before SPF filed for its 595 Patent, (2) the tambour door at the base of SPF's gun cabinet is primarily functional and, therefore, cannot be patented or protected as trade dress, and (3) Defendant Bergman is not a proper defendant because Brunsport is not a sham corporation and because the plaintiff has no evidence that Defendant Bergman actively and knowingly assisted in Brunsport's allegedly infringing conduct. In response, SPF argues (1) that the defendants have not rebutted the presumption that the 595 Patent is valid with clear and convincing evidence, (2) that the design incorporated in the 595 Patent is primarily ornamental because several different door designs could be used to serve the function of providing an entry into the lower portion of a gun cabinet, and (3) that because Defendant Bergman was in charge of promoting and offering for sale the allegedly infringing gun cabinets and because he was the majority Brunsport shareholder, Defendant Bergman actively and knowingly participated in and caused Brunsport to infringe on SPF's 595 Patent.

### 1. Validity of 595 Patent.

Construing the facts in a light most favorable to the plaintiff, the court concludes that Defendant Brunsport has failed to demonstrate with clear and convincing evidence that the 595 Patent is invalid based on the fact that the allegedly infringing gun cabinet was sold more than one year before SPF applied for its patent. The defendants main evidence that the allegedly infringing gun cabinet was sold and publicly displayed more than one year before SPF filed its patent request is Defendant Bergman's affidavit. However, the plaintiff points to depositions and affidavits of several former Brunsport employees and customers which factually contradict Defendant Bergman's affidavit with respect to when the first allegedly infringing gun cabinet was sold or publicly

---

**3.** Brunsport used Model 4108 to designate more than one type of gun cabinet.

displayed.[4] As a result, the court denies Defendant Brunsport's motion for summary judgment with respect to this issue. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514.

■ Defendant Brunsport also make its prior sale and public display argument with respect to the plaintiff's Lanham Act claim reasoning that a prior or senior user of a trademark or trade dress cannot violate 15 U.S.C. § 1125(a). Although the burden of showing a prior sale or public display under the Lanham Act does not appear to require that the evidence be clear and convincing, Defendant Brunsport still must meet its summary judgment burden. Based on the facts discrepancies discussed above, the court concludes that Defendant Brunsport has also failed to show that there is an absence of evidence to support SPF's trade dress claim under the Lanham Act. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2554. Moreover, the court also concludes that SPF has set forth specific facts showing that there are genuine fact issues concerning who sold or publicly displayed the gun cabinet in question first. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514.

### 2. Functional or ornamental.

Defendant Brunsport makes two arguments in support of its functionality theory: (1) the particular design of the tambour door at the base of SPF's gun cabinet is essential to its use in that any manufacturer hired to construct a tambour door would use a ninety degree arc, just as the 595 Patent, to ensure the door operates properly and (2) it would impermissibly hinder competition to allow one firm to restrict others from using a design or configuration, like a tamboor door, that can perform a required function in a product. In response, the plaintiff argues that viewing the 595 Patent design in its entirety as required under *Colida*, the design is clearly primarily ornamental because there are several different ways to achieve the function of providing a place to store guns and related items and because different door designs could be employed to serve the function of providing a selectively openable closure in the lower portion of the gun cabinet.

### a. Patent.

■ "Design patent protection promotes the decorative arts." *Colida v. Sony Corp.*, No. 95–1375, 1995 WL 681478 at * 2 (Fed. Cir. Nov. 16, 1995). "Thus, to gain patent protection, a design patent must claim primarily ornamental rather than primarily functional features." *Id.* "A design is deemed functional if the appearance of the claimed design is 'dictated by' the use or purpose of the article." *Id* (citing *Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 238 (Fed.Cir.1986)). When making a functionality determination the court should consider the overall appearance of the patent design rather than each separate feature. *Id.* "Thus, a design patent may have functional features which in combination with ornamental features show an overall patentable ornamental design." *Id.* Because of the presumption of a design patent's validity es-

---

4. The court believes that the inferences properly allowable to the plaintiff from the following evidence demonstrate that the timing of the defendants' alleged sales and public display is sufficiently controverted to justify the denial of their summary judgment motion on the timing issue. First, the declaration of Mr. Kenneth Real does not offer any first hand knowledge of any public display or sale of the allegedly infringing gun cabinet prior to April 4, 1991. Mr. Real's declaration also does not offer any first hand knowledge concerning what happened to the allegedly infringing gun cabinet after he designed and made it. Second, the Guinta Report also does not contain any first hand knowledge of any public display or sale of the allegedly infringing gun cabinet prior to April 4, 1991. Third, the defendants contend that several of their allegedly infringing gun cabinets were sold in April and May of 1989 when Mr. Real's Declaration indi-

cates that he did not create the allegedly infringing gun cabinet until the last half 1989 and that production of the allegedly infringing gun cabinets did not begin until 1991 or 1992. Fourth, Mr. Dale Allen, the former head of Brunsport's assembly department from 1988–90, testified in his deposition that Brunsport did not make or sell a gun cabinet of the accused design in 1989 or early 1990 and that Brunsport did not send the allegedly infringing gun cabinet to the January of 1990 SHOT show. Finally, the invoices are questionable because Brunsport used the 4108 model number for several different designs and because the alleged buyers did not recall ever purchasing the allegedly infringing gun cabinet from Brunsport, had never seen the design before, or saw the design for the first time when it was presented to them by a representative of SPF.

tablished in 35 U.S.C. § 282, the party asserting the affirmative defense of invalidity based on a functionality theory has the burden of proving the functionality and, therefore, the invalidity of the patent, by clear and convincing evidence. *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1123 (Fed.Cir.1993).

■ Construing the facts in a light most favorable to the plaintiff, the court concludes that Defendant Brunsport has failed to demonstrate by clear and convincing evidence that the 595 Patent is invalid based on the fact that the tambour door is primarily functional. Considering the overall appearance of SPF's gun cabinet design[5], the court is not persuaded on this record that its appearance is 'dictated by' the use or purpose of the article. The plaintiff correctly points out that there are many different ways to achieve the function of providing a storage drawer at the base of a gun cabinet. As noted by the Federal Circuit, "[w]hen there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." *L.A. Gear, Inc.,* 988 F.2d at 1123. Moreover, the plaintiff aptly noted in its oral argument that its decision to place the ninety degree arc in the front of the gun cabinet, as opposed to the back of the gun cabinet where it would not be seen, clearly demonstrates its ornamental purpose. Defendant Brunsport does correctly argue that the plaintiff cannot patent the design of a tambour door, i.e. the need to use a ninety degree arc for it to function properly. However, the plaintiff can patent the design and overall appearance of its gun cabinet even if it contains functional aspects which include a ninety degree arc for a tambour door. *Colida,* 1995 WL 681478 at \* 2. As a result, the court denies Defendant Brunsport's motion for summary judgment with respect to this

issue. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514.

**b. Trade dress.**

■ Functional trade dress is not protectable under the Lanham Act. *L.A. Gear,* 988 F.2d at 1129. The party arguing in favor of functionality has the burden of proof. *Id.* Trade dress is functional if it is essential to the use or purpose of the article or affects its cost or quality. *Id.* If products having the same utility cannot be made without duplicating the design, the product design is deemed essential to the function and is not protectable as a matter of trade dress. *Id.* A design feature of a particular article is 'essential' only if the feature is dictated by the functions to be performed. *Id* at 1129–30.

■ Construing the facts in a light most favorable to the plaintiff, the court concludes that Defendant Brunsport has also failed to demonstrate that the tambour door is primarily functional for trade dress purposes. Defendant Brunsport has presented no credible evidence indicating that the tambour door as designed and presented by the plaintiff is essential to the use or purpose of the gun cabinet, that the tambour door affects the gun cabinet's cost or quality, or that a gun cabinet cannot be made without using such a tambour door at the base. *L.A. Gear,* 988 F.2d at 1129. Moreover, as the court concluded above, the tambour door is not essential because it is not dictated by the function it performs. *Id.* at 1129–30. As a result, the court denies Defendant Brunsport's motion for summary judgment with respect to this issue. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514.

**3. Defendant Bergman.**

■ The plaintiff seeks to hold Defendant Bergman liable for Defendant Brunsport's alleged infringement of the 595 Patent

---

**5.** Defendant Brunsport cites *Read v. Portec, Inc.,* 970 F.2d 816 (Fed.Cir.1992) for the proposition that the court should look only at the tambour door, in lieu of the overall appearance of SPF's gun cabinet, to determine the functionality versus ornamentality issue. The court rejects this argument for two reasons. First, unlike in *Read,* the plaintiff has presented evidence that an ornamental aspect of its gun cabinet design is con-

tained in the defendants' gun cabinet design. Second, the Federal Circuit has more recently stated that "[w]hen making a functionality determination the court should consider the overall appearance of the patent design rather than each separate feature." *Colida v. Sony Corp.,* No. 95–1375, 1995 WL 681478 at \* 2 (Fed.Cir. Nov. 16, 1995).

pursuant to 35 U.S.C. § 271(b).[6] Section 271(b) provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." The Federal Circuit, in a recent decision, has clearly spelled out the standard for imposing personal liability in a case such as this one:

"In general, a corporate officer is personally liable for his tortious acts, just as any individual may be liable for a civil wrong. This general rule 'does not depend on the same grounds as piercing the corporate veil....' When personal wrongdoing is not supported by legitimate corporate activity, the courts have assigned personal liability for wrongful actions when taken on behalf of the corporation. However this liability has been qualified, in extensive jurisprudence, by the distinction between commercial torts committed in the course of the officer's employment, and negligent and other culpable wrongful acts.

Thus when a person in a control position causes the corporation to commit a civil wrong, imposition of personal liability requires consideration of the nature of the wrong, the culpability of the act, and whether the person acted in his/her personal interest or that of the corporation."

*Hoover v. Custom Metalcraft, Inc.,* 84 F.3d 1408, 1411 (Fed.Cir.1996) (citations omitted). The *Hoover* court went on to state that in order for a corporate officer to be liable for patent infringement without first piercing the corporate veil, "the officer must act culpably in that the officer must actively and knowingly assist with the corporation's infringement." *Id* at 1411.

 Because it has not argued that Defendant Brunsport was a sham corpora-

tion during the relevant time period, the plaintiff has the burden of showing that Defendant Bergman actively and knowingly assisted with Defendant Brunsport's alleged infringement of the plaintiff's patent. *Hoover,* 84 F.3d at 1411. The plaintiff's only evidence on this issue is that Defendant Bergman was responsible for making the decisions concerning what Brunsport was selling and to whom it would sell and that Defendant Bergman was president and majority shareholder of Brunsport. The plaintiff also relies on an assertion, unsupported by any evidence, that Defendant Bergman knowingly promoted and offered the allegedly infringing gun cabinet for sale even after learning of the existence of SPF's patent. The court concludes that the plaintiff's evidence and unsupported allegation do not make the requisite showing that Defendant Bergman possessed the specific intent to aid and abet infringement.[7] *Kidd v. Taos Ski Valley, Inc.,* 88 F.3d 848, 853 (10th Cir.1996) (holding that a non-moving party's conclusory allegations are not sufficient to defeat a motion for summary judgment); *Hoover,* 84 F.3d at 1411 (citing *Water Techs. Corp. v. Calco, Ltd.,* 850 F.2d 660, 668 (Fed.Cir. 1988)). As a result, because there is an absence of evidence to support the plaintiff's claim against Defendant Bergman, the court grants Defendant Brunsport's summary judgment motion with respect to Defendant Bergman's personal liability. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2554.

### C. Plaintiff SPF's partial summary judgment motion.

#### 1. Choice of law.

 Because this case is brought in federal court based on diversity jurisdiction, the

---

**6.** It is possible to sue a corporate officer under 35 U.S.C. § 271(a) for direct infringement of a patent if the corporation is first proved to be the corporate officer's alter ego. *See Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1578–79 (Fed.Cir.1986). Because the plaintiff does not allege that Defendant Brunsport is the alter ego of Defendant Bergman or that Brunsport is a sham corporation, the court assumes that the plaintiff is suing Defendant Bergman under § 271(b) as a patent infringement inducer and not under § 271(a) as a direct infringer. Id.

**7.** The plaintiff argues that *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565 (Fed.

Cir.1986) is controlling and stands for the proposition that in order to be held personally liable for the allegedly infringing acts of Brunsport, Defendant Bergman need only act negligently. The court disagrees. *Orthokinetics* requires that the officer actively aid and abet its corporation's infringement to be held personally liable. 806 F.2d at 1579. The court believes that actively aiding and abetting is a higher standard than mere negligence. Moreover, if mere negligence were the standard, corporate officers would be defendants in most patent infringement lawsuits, which is contrary to the limited liability protection provided by corporations.

court must first determine what substantive law applies to the defendants' state law counterclaim under Kansas' choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Because the defendants' claim sounds in tort, the court must look to Kansas' general tort conflicts rule to determine what substantive law governs. In *Ling v. Jan's Liquors,* 237 Kan. 629, 703 P.2d 731 (1985), the Kansas Supreme Court held that the law of the state where the tort occurs controls. Under this rule, the tort is deemed to have occurred where the wrong was felt. *Id.* Because the wrong in this case is the financial harm the defendants allegedly suffered as a result of the plaintiff's conduct, the court must determine where the defendants felt this financial injury in order to determine where the tort is deemed to have occurred. Defendant Brunsport states that it is an Illinois corporation and Defendant Bergman states that he is a resident of Illinois. The parties seem to agree that Illinois law applies. Therefore, for the purposes of this motion and because the parties have treated Illinois law as controlling, the court will apply Illinois law.

### 2. Tortious Interference standard.

■ In order to state a claim of tortious interference with a business relationship under Illinois law, the defendant must show: (1) the existence of a valid business relationship; (2) the plaintiff's knowledge of the existing business relationship; (3) the plaintiff's intentional and unjustified interference inducing or causing a termination of the relationship; (4) resulting damage to the defendant. *Curtis 1000, Inc. v. Suess,* 843 F.Supp. 441, 452 (C.D.Ill.), *aff'd,* 24 F.3d 941 (1994).

### 3. Analysis.

■ The defendants allege that beginning in 1991 and continuing through October of 1993, the plaintiff tortiously interfered with Defendant Brunsport's valid business relationship with Walmart. Specifically, the defendants allege that the president of SPF, Mr. Lawrence Jacquinot, made false statements to A.W. Dean Burns, a senior buyer for Walmart, concerning SPF's patent and the defendants' allegedly infringing gun cabi-

net which caused Walmart to reduce and eventually discontinue its business relationship with Defendant Brunsport.

Construing the facts in a light most favorable to the defendants, the court concludes that summary judgment is appropriate for two reasons. First, the defendants rely on Defendant Bergman's sworn declaration, which is unsubstantiated by any documentation, that Walmart decreased its orders from Brunsport before the plaintiff obtained a patent and on Defendant Bergman's conclusion that the plaintiff must have said something to Walmart to cause it to decrease and eventually cease conducting business with Brunsport. The plaintiff has presented unrefuted evidence (1) that Mr. Jacquinot only told Mr. Burns that SPF had a patent pending concerning the gun cabinet in question and (2) that Walmart independently concluded that Defendant Brunsport's gun cabinet infringed on the plaintiff's patent after the plaintiff's patent was issued. Second, the plaintiff has presented evidence provided by Walmart refuting the allegation that Brunsport's sales dramatically declined shortly after Mr. Jacquinot told Mr. Burns that SPF had a pending patent on its gun cabinet. The Walmart records indicate that Brunsport's sales to Walmart dropped slightly from 1992 to 1993, but increased from 1993 to 1994. Finally, the plaintiff correctly points out that Defendant Bergman does not have personal knowledge as to what happen in the meeting between Mr. Jacquinot and Mr. Burns and, therefore, his guess is not sufficient to preclude summary judgment. As a result, because there is an absence of evidence that SPF intentionally and unjustifiably interfered with Brunsport's business relation with Walmart or that SPF's conduct induced or caused the termination of that relationship, the court grants the plaintiff's summary judgment motion. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2554; *Curtis 1000, Inc.,* 843 F.Supp. at 452.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Brunsport's motion for summary judgment (Doc. # 51) is granted with respect to Defendant Bergman's personal liability and otherwise denied.

**IT IS FURTHER ORDERED** that the plaintiff's motion for partial summary judgment (Doc. # 53) is granted.

**IT IS SO ORDERED.**