**ALTRUTECH, INC., Plaintiff,**

v.

**HOOPER HOLMES, INC. and American Service Bureau, Inc., Defendants/Third-party plaintiffs,**

v.

**Michael D. MILLIKEN, Michael H. Olson, and Insurance Medical Reporter, Inc., Third-party defendants.**

**Civil Action No. 96–2091–GTV.**

United States District Court, D. Kansas.

June 2, 1998.

Mark B. Flannagan, Mitchell, Kristl & Lieber, P.C., Kansas City, MO, Michael W. Thompson, Kansas City, MO, for Altrutech Inc., Michael D. Milliken, Michael H. Olson.

James P. O'Hara, Steven D. Ruse, Andrew M. DeMarea, Shughart, Thomson & Kilroy, Overland Park, KS, Robert A. Henderson, Shughart, Thomson & Kilroy, P.C., Kansas City MO, for Hooper Holmes, Inc.

James P. O'Hara, Steven D. Ruse, Andrew M. DeMarea, Shughart, Thomson & Kilroy, Overland Park, KS, for American Service Bureau, Inc.

Rachael K. Pirner, Eric B. Metz, Triplett, Woolf & Garretson, L.L.C., Wichita, KS, for Olsten Corporation.

## MEMORANDUM AND ORDER

VAN BEEBER, Chief Judge.

In this diversity of citizenship case, plaintiff Altrutech, Inc. alleges that defendants breached a purchase agreement and a management agreement (Counts I–IV), acted in bad faith in breaching the agreements (Count V), engaged in unfair trade practices (Count VI), and tortiously interfered with plaintiff's relationships with employees, contractors, and clients (Count VII). Plaintiff seeks punitive damages on the tort claims. By stipulation, the parties dismissed Count I, and the court dismissed Counts V and VI in a January 26, 1998 memorandum and order. The case is before the court on the motions for partial summary judgment (Docs. 163 & 165) of defendants Hooper Holmes, Inc. ("Hooper Holmes") and American Service Bureau, Inc. ("ASB"). The first motion seeks summary judgment on Counts II, III, and IV. The second motion seeks summary judgment on Count VII and plaintiff's request for punitive damages. For the reasons set forth below, defendants' first motion (Doc. 163) is denied,

and defendants' second motion (Doc. 165) is granted.

## I. Factual Background

On April 1, 1991, Altrutech entered into a purchase agreement with Lifetime Corporation in which Lifetime purchased assets Altrutech used in its paramedical business. Lifetime transferred its interest in the assets to ASB, its wholly-owned subsidiary. On May 1, 1991, the parties entered into a Special Contractor Agreement designed to memorialize the parties' relationship until the pending management agreement became effective. On July 1, 1991, Altrutech and ASB entered into a management agreement, under which Altrutech agreed to manage the paramedical business it had previously sold to ASB. The management agreement was for an initial period of four years, with an option to renew for two years in 1995, and with a further option to renew annually for an indefinite period.

The effect of the management agreement was to transfer ownership of the business to ASB, while Altrutech continued to handle the day-to-day operations of the business. The primary functions of the business were to provide physical examinations of applicants applying for life insurance and other services relating to the life insurance industry. The management agreement provided that Altrutech could be terminated only for cause or breach and that, in the event of a breach, it had the right to cure. Also, in the event of termination for cause, Altrutech was to receive thirty days notice before such termination took effect.

In August 1993, Lifetime, including its subsidiary ASB, was purchased by Olsten Corporation. In October 1995, Olsten sold ASB to defendant Hooper Holmes, Inc.[1] By letter dated January 19, 1996, Hooper Holmes terminated Altrutech as manager for alleged undisclosed breaches of confidentiality. The letter informed Altrutech that Hooper Holmes planned to resume possession of the business assets Altrutech was using in its management business. On January 26, 1996, Hooper Holmes accelerated the termination to become effective January 29, 1996. Altru-

tech asserted that the notice of termination was defective, and refused to surrender various business assets to Hooper Holmes. Altrutech continued to provide paramedical services while using the assets that Hooper Holmes had purchased under the purchase agreement.

When Hooper Holmes terminated the management agreement in January 1996, it merged the entity known as ASB with a second paramedical service company known as Portamedic. In order to avoid possible confusion caused by this merger, defendants claim that it was necessary to perform a "sales blitz" to inform local insurance agents about the change of ownership of ASB and about Altrutech's recent termination as manager. This sales blitz was directed at 240–260 offices of insurance agents regardless of whether they previously worked with Altrutech. Altrutech contends that this sales blitz, in conjunction with Hooper Holmes' breach of the management contract, was designed to drive Altrutech out of business. Regardless of defendants' intent in conducting the sales blitz, the record indicates that no intentional interference with plaintiff's business relationships occurred until January 22, 1996—three days after Hooper Holmes terminated the management agreement.

## II. Summary Judgment Standards

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupportable claims or defenses, and Rule 56 should be interpreted in a way that accomplishes this purpose. See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court's proper inquiry is whether there is a need for a trial; in other words, whether "there are any genuine factual issues that properly can be resolved only by a finder of

1. Through this sale, Hooper Holmes acquired interest in the purchase agreement between Life-

time Altrutech and ASB's management agreement with Altrutech.

fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See id.*

### III. Discussion

Defendants have submitted two motions for partial summary judgment. The first seeks summary judgment on plaintiff's breach of contract claims (Counts II, III, and IV). The second seeks summary judgment on plaintiff's claim of tortious interference with business contracts (Count VII) and plaintiff's request for punitive damages.

### A. Breach of Contract Claims (Count II, III, and IV)

Defendants claims that summary judgment should be granted on plaintiff's remaining breach of contract claims for three reasons. First, defendants claim that Altrutech has already elected its remedy for any damages by retaining control of the business that it formerly managed. Second, defendants assert that Altrutech's damages are limited by a liquidated damages clause found in the purchase agreement. Third, defendants contend that the management agreement was terminable at will because it was a perpetual contract with an indefinite duration.

#### 1. Choice of Law

■ The management agreement and the purchase agreement contain choice of law provisions indicating that the agreements are to be construed pursuant to Illinois law. In a diversity of citizenship action such as this, the court must apply the choice-of-law rules of the state in which it sits, *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), including the rules on whether a "contractual choice-of-law provision is enforceable." *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1360 (10th Cir.1990). Federal courts in Kansas routinely enforce the parties' contractual choice-of-law provisions under Kansas choice-of-law rules. *Id.* Under Kansas law, the enforceability of a contractual choice-of-law provision turns on whether the forum selected bears a reasonable relation to the contract at issue. *See Atchison Casting Corp. v. Dofasco, Inc.*, 889 F.Supp. 1445, 1455 (D.Kan.1995).

■ It is undisputed that Illinois was the primary place of business and state of incorporation of ASB, a contracting party. Furthermore, it is undisputed that the agreements were largely negotiated and drafted in Illinois. Accordingly, the court is satisfied that Illinois bears a reasonable relation to both the management agreement and the purchase agreement and that Illinois contract law governs.

#### 2. Did Altrutech elect a remedy by retaining control of the business it once managed?

■ "An election of remedies is the adoption of one or two or more co-existing remedies, with the effect of precluding a resort to the others. However, the preclusion of other remedies occurs only if the remedies elected are inconsistent." *In re Witte*, 841 F.2d 804, 807 n. 4 (7th Cir.1988) (citation omitted). The Seventh Circuit has held that under Illinois law, "[r]emedies for breach of contract are intended to make the injured party whole by compensating [it] so that (it) will be in the same position [it] would have been in if the contract had been fully performed." *Id.* at 807. If plaintiff was not made whole through its continued participation in the paramedical services market, its elected remedies are not inconsistent.

■ Defendants claim that plaintiff elected to stay in possession of defendants' assets and remain in the paramedical business thereby barring plaintiff from collecting any

damages caused by defendants' alleged breach of the management agreement. Under the management agreement, plaintiff was to retain seventy-five percent of the revenues of the business it managed. Defendants claim that plaintiff, by electing to stay in possession of the business assets, has retained one-hundred percent of the revenue of the business after the management agreement was terminated. According to defendants, any further recovery by plaintiff would amount to impermissible double recovery.

Plaintiff admits that it remained in possession of defendants' tangible business assets after Hooper Holmes terminated the management agreement. Plaintiff contends, however, that it did not retain various intangible, but no less necessary, aspects of the business, such as business in process, billings in process, receivables, and insurance company approvals. According to plaintiff, defendants retained these intangible assets after terminating plaintiff's management agreement. Plaintiff insists that even though it maintained an income stream from its participation in the paramedical field, its loss of necessary intangible assets decreased its revenue to a level below what it would have enjoyed under the terms of the management agreement. Accordingly, plaintiff claims that it has suffered a financial loss despite its continued efforts to compete in the paramedical services market, and that its current election to seek damages under a breach of contract claim is consistent with its retention of the business assets.

The court concludes that there exists a genuine issue of material fact as to whether plaintiff's retention of the business assets is inconsistent with its current claim for damages. The record before the court does not contain financial records or any other evidence indicating that plaintiff was made whole by its retention of the tangible business assets. Summary judgment, therefore, cannot be granted on the ground that plaintiff's claims are barred by its retention of the business assets.

### 3. Are Altrutech's damages limited by a liquidated damages clause?

 Defendants next argue that summary judgment should be granted on Counts II, III, and IV because any further recovery by plaintiff would be precluded by the liquidated damages clause in the parties' purchase agreement. Defendants argument is predicated on the assumption that the purchase agreement, originally entered into by Lifetime and Altrutech, is applicable to breaches of the management agreement. Paragraph 4.1(b) of the purchase agreement provides that, in the event of a breach of contract by Lifetime, "all sums paid" will be retained by Altrutech as liquidated damages and "shall be considered full and final payment for any and all of the obligations outlined in … the Management Agreement dated July 1, 1991." Plaintiff disagrees and contends that the management agreement alone controls this issue. Plaintiff argues that because the management agreement is fully integrated, the liquidated damages clause in the purchase agreement does not apply to breaches of the management agreement.

 "It is well settled under the doctrine of merger and the parol evidence rule that a written agreement which is complete on its face supersedes all prior agreements on the same subject matter and bars the introduction of evidence concerning any prior term or agreement on that subject matter." *Barille v. Sears Roebuck & Co.*, 289 Ill. App.3d 171, 224 Ill.Dec. 557, 682 N.E.2d 118, 123 (1997). "This particularly applies when the contract … contains an unambiguous merger or integration clause." *Id.* Section 8.3 of the management agreement provides:

> This Management Agreement constitutes the entire agreement between the parties and cannot be changed or terminated orally and supersedes any prior writing or oral agreements between the parties. No modification or waiver of any of the provisions hereof shall be effective unless in writing and signed by the party against whom it is sought to be enforced.

The language of the merger clause is unambiguous. When an agreement contains no ambiguity, the intent of the parties "must be determined only from the agreement's language." *Magnus v. Lutheran Gen. Health Care Sys.*, 235 Ill.App.3d 173, 176 Ill.Dec. 209, 601 N.E.2d 907, 912 (1992). The court concludes that the management agreement was intended to be the final expression of the parties' agreement and is complete on its

face. Accordingly, the management agreement supersedes any language in the purchase agreement concerning a breach of the management agreement, including the liquidated damages provision. Summary judgment, therefore, cannot be granted on the ground that plaintiff's damages are limited by the liquidated damages clause in the purchase agreement.

## 4. Is the management agreement a perpetual contract rendering it terminable at will?

Under Illinois law, a contract that fails to fix a time for its duration and calls for continual performance is ordinarily terminable at will by any contracting party. It is equally true, however, that a contract that is terminable upon the occurrence of an event is not terminable at will, but is to be enforced according to its terms. *Consolidated Laboratories, Inc. v. Shandon Scientific Co.*, 413 F.2d 208, 211–12 (7th Cir.1969). "The event upon which the contract will terminate must be an 'objective event' so as to make the contract sufficiently definite in duration." *Jespersen v. Minnesota Mining and Manuf. Co.*, 288 Ill.App.3d 889, 224 Ill. Dec. 85, 681 N.E.2d 67, 70 (1997).

Defendants argue that the contract is perpetual and, thus, terminable at will. Defendants' argument is two-fold. First, defendants claim that plaintiff has made judicial admissions that the agreement was perpetual. Second, defendants claim that the events upon which the contract will terminate are under the exclusive control of plaintiff and, therefore, are not "objective." Plaintiff contends that a contract terminable for cause or breach is not perpetual or terminable at will. Plaintiff further contends that the fact that the events upon which a contract will terminate are under one party's sole control, does not mean the contract is terminable at will. The court agrees with plaintiff and denies summary judgment.

The court rejects the first prong of defendants' argument. There is no evidence in the summary judgment papers that plaintiff made any statement that amounts to a judicial admission.

The second prong of defendants' argument is equally unavailing. Defendants maintain that the agreement is terminable at will because the events upon which the contract will terminate are under the exclusive control of plaintiff and, therefore, are not "objective." Section 4.2 of the management agreement provides:

> During the term of the Management Agreement, the Company may at any time ... dismiss the Manager and its rights to compensation hereunder for cause. As used herein, the term "cause" shall include, but not limited to, the following malfeasance: conviction of the Manager's directors, officers, or shareholders of any felony, fraud, or embezzlement by which the Company may provide five (5) days prior written notice to Manager of Manager's dismissal; or Manager's breach of the covenants contained in Section 5 hereof, however Manager shall have the opportunity to cure its breach of those covenants for thirty (30) days from the date the initial breach occurred.

This paragraph sets forth specific events upon which the agreement may be terminated. In Illinois, "[g]ood cause constitutes an event, and is a term of duration. To hold otherwise would in effect make most good cause termination clauses void; to hold that a contract with a good cause termination clause is terminable at will would at best be counterintuitive." *Schenley Affiliated Brands Corp. v. Mar–Salle, Inc.*, 703 F.Supp. 744, 747 (N.D.Ill.1989). Furthermore, the term "breach" contemplates a specific event upon which the contract may be terminated. *See First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1012 (7th Cir.1985).

The question remaining for the court is whether the agreement is terminable at will because the events upon which the agreement may be terminated are under the exclusive control of plaintiff and, therefore, are not "objective." In *Consolidated Laboratories,* the Seventh Circuit held that, under Illinois law, a contract is not for an indefinite period of time even when the events upon which the contract may be terminated are under the exclusive control of one party. 413 F.2d at 212. The single case that appears to disagree with this proposition is the Illinois Court of Appeal's decision in *Jespersen v.*

*Minnesota Mining,* 288 Ill.App.3d 889, 224 Ill.Dec. 85, 681 N.E.2d 67. The contract in *Jespersen* allowed for termination upon breach of any term or condition of the agreement or failure of a party to make payments within ninety days of shipment. *Id.,* 288 Ill.App.3d 889, 681 N.E.2d at 70. The court held that the contract was terminable at will because the "termination-triggering events" were not "objective" as they were under the exclusive control of one party. *Id.* 681 N.E.2d at 70–71.

This court concludes that *Jespersen* misapplied Illinois law. The majority's error was highlighted and explained by Justice Hoffman's dissenting opinion:

> [Breach and failure to make payments] are cognizable events upon which termination may occur; and consequently ... the subject contract is not perpetual and terminable at will, even in the absence of a specified termination date.

*Id.* 681 N.E.2d at 72 (Hoffman, J., dissenting). The court concludes that, under Illinois law, the management agreement in the case at bar is not terminable at will. Both the language and nature of the agreement suggest to the court that the parties intended to create an agreement terminable for breach, rather than terminable at will. *See First Commodity,* 766 F.2d at 1012. Accordingly, summary judgment is not warranted on defendants' claim that the contract is terminable at will.

## B. Tortious Interference With Prospective Business Relationships and/or Existing Contracts (Count VII)

### 1. Choice of Law

■■■■■■ A federal court sitting in diversity jurisdiction applies the choice of law provisions of the forum state, which in this case is Kansas. *See Missouri Pac. R.R. Co. v. Kansas Gas & Elec. Co.,* 862 F.2d 796, 798 n. 1 (10th Cir.1988). "Because the defendants' claim sounds in tort, the court must look to Kansas' general tort conflicts rule to determine what substantive law governs." *St. Paul Furniture Mfg. Co. v. Bergman,* 935 F.Supp. 1180, 1187 (D.Kan.1996). In Kansas, the law of the state where the tort occurs controls. *See Ling v. Jan's Liquors,* 237 Kan. 629, 634, 703 P.2d 731 (1985). "Under this rule, the tort is deemed to have occurred

where the wrong was felt." *St. Paul Furniture,* 935 F.Supp. at 1187. Plaintiff alleges that it sustained financial injury as a result of defendants tortious interference; therefore, the court must determine where this financial injury was felt to determine where the tort occurred. *See id.* Plaintiff states that it is located in Kansas and incorporated under the laws of Kansas. Because any financial injury suffered by plaintiff was felt in Kansas, the court will apply Kansas substantive law to plaintiff's tort claims.

### 2. Tortious Interference with a Contract

■■■■ "Under Kansas law, the elements essential to recovery for tortious interference with a contract are: (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his or her intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom." *DP–Tek, Inc. v. AT&T Global Info. Solutions Co.,* 891 F.Supp. 1510, 1516 (D.Kan.1995), *aff'd,* 100 F.3d 828 (10th Cir.1996). Defendants claim that plaintiff has failed to establish any of the above elements. Plaintiff does not contest this assertion in its response. Accordingly, summary judgment is granted to defendants on plaintiff's claim for tortious interference with an existing contract.

### 3. Tortious Interference With Prospective Business Relationships

■■■■ "Tortious interference with a prospective business relationship requires some type of communication between the defendant and the third party in which the defendant induces the third party not to engage in a prospective contract or business relation with the plaintiff." *Id.* at 1520. To prevail on a cause of action for tortious interference with a prospective business relationship under Kansas law, a plaintiff must prove:

> (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that plaintiff was reasonably certain to have continued the relationship or realized the expectancy ex-

cept for the conduct of the defendant; (4) intentional misconduct by defendant; and (5) that the damages plaintiff suffered are a direct or proximate cause of defendant's misconduct.

*Turner v. Halliburton Co.*, 240 Kan. 1, 722 P.2d 1106, 1115 (1986). Defendants contend that plaintiff is unable to establish element four.[2]

▮▮▮▮ To establish the fourth element, a plaintiff must show that the alleged interference was both intentional and improper. *See* Restatement (Second) of Torts § 766B cmt. d (1977); *see also Turner*, 240 Kan. 1, 722 P.2d 1106. Generally, the court looks to Restatement (Second) of Torts § 767 to determine if a party's intentional interference is improper.[3] However, when a plaintiff and defendant are competitors, the court must look to the factors set forth in Restatement (Second) of Torts § 768 to determine the propriety of a business competitor's interference with a prospective business relationship. *DP–Tek*, 100 F.3d at 832. Under section 768, a party that intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor does *not* interfere improperly with the other's relation if:

(a) the relation concerns a matter involved in the competition between the actor and the other;

(b) the actor does not employ wrongful means;

(c) his action does not create or continue an unlawful restraint of trade; and

(d) his purpose is at least in part to advance his interest in competing with the other.

Restatement (Second) of Torts § 768. As stated above, defendants contend that plaintiff is unable to establish subsection b—that defendants employed wrongful means. In *DP–Tek*, the Tenth Circuit interpreted the wrongful means element of subsection b to require independently actionable conduct. *Id.* Independently actionable conduct is conduct that itself forms a basis for liability for the actor. "[C]ompetitive conduct which is neither illegal nor independently actionable does not become actionable because it interferes with another's prospective contractual relations." *Id.* (citing *Amerinet, Inc., v. Xerox Corp.*, 972 F.2d 1483, 1507 (8th Cir. 1992)). If section 768 applies and plaintiff is unable to show that defendants' intentional interference is independently actionable, summary judgment is appropriate.

Plaintiff argues that section 768 does not apply to the case at bar because plaintiff and defendants were not competitors when defendants allegedly interfered with plaintiff's prospective business agreements. Plaintiff attempts to bolster its argument with vague and, at times, contradictory documents and deposition testimony. Even if the court accepted plaintiff's reading of this evidence, plaintiff's argument would fail.

▮▮ Hooper Holmes terminated the management agreement between the parties on January 19, 1996. Regardless of the parties' status prior to January 19, 1996, Altrutech became a competitor of Hooper Holmes after this date. It is undisputed that no intentional interference occurred prior to January 22, 1996. Because the interference alleged by plaintiff occurred after Hooper Holmes terminated the management agreement, the

2. Specifically, defendants argue that plaintiff has failed to show that defendants' conduct was "wrongful" as required under the competitor's privilege articulated in Restatement (Second) of Torts § 768. If the court agrees with defendants and finds that plaintiff and defendants were competitors at the time of the intentional interference, the intentional misconduct required by element four must be "wrongful" to be tortious. *DP–Tek, Inc. v. AT&T Global Info. Solutions Co.*, 100 F.3d 828, 832 (10th Cir.1996).

3. Section 767 provides:

In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:
(a) the nature of the actor's conduct,
(b) the actor's motive
(c) the interests of the other with which the actor's conduct interferes,
(d) the interests sought to be advanced by the actor,
(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
(f) the proximity or remoteness of the actor's conduct to the interference and
(g) the relations between the parties.

parties were competitors during the relevant time period and section 768 applies.

Plaintiff has failed to refute defendants' contention that the elements of section 768 are satisfied. The court, therefore, concludes that defendants' conduct was not wrongful, that it concerned a matter involved in the competition between the parties, that it did not create or continue an unlawful restraint of trade, and that the purpose of the conduct was to advance defendants interests in competing with plaintiff. Accordingly, defendants competitive conduct was not improper, and defendants' second motion for summary judgment is granted. Because Count VII was plaintiff's only remaining count sounding in tort, plaintiff's request for punitive damages is moot.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' first motion (Doc. 163) seeking summary judgment on plaintiff's breach of contract claims (Counts II, III, and IV) is denied.

IT IS FURTHER BY THE COURT ORDERED that defendants' second motion (Doc. 165) seeking summary judgment on plaintiff's claim of tortious interference with business contracts (Count VII) and plaintiff's request for punitive damages is granted.

The clerk shall mail copies of this order to counsel of record.

**IT IS SO ORDERED.**