STATE OF MAINE
PENOBSCOT, SS.



SUPERIOR COURT
Docket No. CV-2000-17

GLENNIS A. McSORLEY
Plaintiff,

v.

INHABITANTS OF THE
TOWN OF CARMEL,
Defendant.

)
)
)
)
)
)
)
)
)

**ORDER ON MOTION**
**FOR SUMMARY JUDGMENT**

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (Count IV), Defendant's Cross-Motion for Partial Summary Judgment pursuant to M.R. Civ. P. 56(b); and Defendant's Motion for Summary Judgment. For the following reasons, Plaintiff's Motion for Partial Summary Judgment is DENIED, Defendant's Cross-Motion for Partial Summary Judgment is GRANTED; and Defendants' Motion is DENIED in part and GRANTED in part.

## FACTS

Glennis McSorley's complaint alleges as follows: Count I - Age Discrimination; Count II - Wrongful termination because of sex; Count III - Wrongful termination in violation of 26 M.R.S.A. § 833, Maine Whistleblowers' Protection Act ("MWPA") and Maine Human Rights Act ("MHRA"); Count IV - Requests the Court to Order Defendant to hold a

hearing pursuant to 30-A M.R.S.A. § 2633.

As early as 1950, the Town of Carmel had a Town Manager. The Selectmen appointed McSorley as Town Manager in July, 1968 and yearly thereafter. Plaintiff has also held the positions of Tax Collector, Town Treasurer, Agent to the Overseers Report, Road Commissioner, and Registrar of Voters. On October 30, 1995, the Selectmen issued Glennis McSorley ("McSorley") a warning letter as to her performance as Town Manager and Road Commissioner. On April 28, 1997, McSorley signed an employment contract with the town.[1] McSorley Dep. at 28; Dep. Ex. 10. The Contract provides for termination and severance pay.[2] On May 5, 1997

---

1. The contract provided for a performance evaluation once a year McSorley also received her town manager evaluations April 28, 1997. Her 2.87 rating fell between "2. Meets work performance standards," and "3. Marginally meets work performance standards." The rating scale was 1 through 4 with 4 being the lowest. (McSorley Dep. p. 16, Dep. Ex. 7).

2. A. The Board may, in it's sole discretion, terminate this agreement without cause. In the event of termination of the agreement without cause, the Town Manager, shall be entitled to a lump sum payment of three (3) months salary, less the appropriate deductions for withholding taxes and the like.

B. The Town Manager may be removed or suspended from office for cause pursuant to the provisions of 30-A M.R.S.A., Section 2633, or such authority as may be in effect at the time of suspension or removal. If the Town Manager is removed for cause, he/she shall not be entitled to any severance pay or benefits, except for accumulated vacation time. . ..

McSorley received an "Annual Goal Setting" document setting out the Selectmen's expectations. McSorley received a written "warning of unsatisfactory performance . . .." on February 9, 1998 concerning her efforts in obtaining an engineering estimate for bridge widening and repairs. Her April 20, 1998 performance rating was 3.11.

McSorley signed a second Employment Agreement on May 8, 1998. That agreement stated that it commenced on May 6, 1998 and "shall continue for a period of six (6) months, expiring on November 6, 1998, unless sooner terminated pursuant to the terms of this Agreement."[3] On November 2, 1998, the Board voted to postpone her performance review until November 9, 1998.[4] After the performance review on November 9, 1998, the Selectmen gave her a performance rating of 3.04. After

---

3. The Agreement provided for performance evaluations and included a memo "Goals and Time Tables for Town Manager." McSorley Dep. at 9-12, Dep. Ex. 1 and 2.

4. Chairman, John Luce, asked Town Manager Glennis McSorley, if she would stay until the issue is settled. (Town Manager's Contract expires Friday, 11/06/98.) Glennis McSorley, Town Manager, asked that the contract be legally extended. After discussion, Glennis McSorley, Town Manager said she would be willing to work Monday, November 09, 1998, one business day after her contract expires.

Minutes Selectmen's Meeting, November 2, 1998.

discussing the evaluation, the Board voted to contact an attorney to draft a preliminary resolution. Selectman Luce then asked if she "was going to stay on until the matter was resolved." She responded "she was not sure what she is going to do." Minutes Selectmen's Meeting, November 9, 1998. Tom Johnston, Esq.'s November 13, 1998 letter advised the town that "[w]hile Ms. McSorley might claim that there was an expectation of reappointment after six months which establishes a property interest in reappointment and requires a due process hearing, we believe that the signing of the six month contract, as well as the conditions under which it was issued, made it apparent that McSorley could not expect to be reappointed after the six month term," and advised they had three choices if it "wishes that Ms. McSorley not serve any longer as Town Manager." The options include:

> (I) they could grant Ms. McSorley "a just cause" removal hearing pursuant to 30-A M.R.S.A. § 2633; (ii) they could end Ms. McSorley's employment contemporaneously with the conclusion of her most recent 6-month employment contract, and create a written record of their reasons for non-renewal pursuant to 1 M.R.S.A. § 407; or (iii) they could reach an amicable negotiation with Ms. McSorley as to mutual releases and severance pay.

At the November 16, 1998 selectmen's meeting, the Selectmen circulated the preliminary resolution of removal drafted by Attorney Johnston based on the events of April, 1998. The Selectmen took no action on the

resolution. The motion at the November 23 selectmen's meeting for her to stay on through the March Town Meeting did not pass. After several motions, the motion that passed was for her to stay on through the hiring process. She stayed on after January 4, 1999 to help the Town in breaking in the new town manager. (McSorley Dep. at 36-38).[5] The new town manager, Tom Richmond, commenced his duties on January 4, 1999. He informed McSorley on January 25, 1999 that her services were no longer needed.

On February 5, 1999, McSorley's attorney requested that the Town reinstate her as town manager and commence a removal proceeding under 30-A M.R.S.A. § 2633. On February 8, 1999, the Selectmen voted not to reinstate McSorley or otherwise respond to her attorney's letter. McSorley Aff. ¶8; Ex. SJ5.

## ANALYSIS

A party is entitled to summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a

---

[5] Q. Okay. So you were assisting the town in breaking in the new town manager; is that my understanding?
A. Yes.
Q. Okay, Did you agree to do that?
A. Yes.

matter of law. Burke v. Port Resort Realty Corp., 1998 ME 193, ¶7, 714 A.2d 837, 839. A genuine issue of material fact is present only when "there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial." Prescott v. State Tax Assessor, 1998 ME 250, ¶ 5, 721 A.2d 169, 171-72 (internal quotations omitted).

In determining whether to grant or deny a motion for a summary judgment, the trial court "is to consider only the portions of the record referred to, and the material facts set forth, in the Rule 7(d) statements." Handy Boat Serv., Inc. v Professional Servs., Inc., 1998 ME 134, ¶ 12, 711 A.2d 1306, 1310. If the parties' Rule 7(d) statements, and the portions of the record referred to, do not reveal a genuine issue regarding a material fact, summary judgment is appropriate. Burdzel v. Sobus, 2000 ME 84, ¶ 9, 750 A.2d 573, 576. A fact is material if it has the potential to affect the outcome of the case under governing law. Id. ¶ 6, 750 A.2d at 575. The parties' pleadings comply with the new rules except that Defendant's additional statement of facts in opposition to Plaintiff's motion are not set out in separate numbered paragraphs.[6]

---

6. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by paragraph (4) of this rule.

## I. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Two primary issues are before the Court. First, has the Town of Carmel adopted a "town manager plan" form of government pursuant to statute such that 30-A M.R.S.A. §§ 2631 et seq. apply to McSorley's termination? Secondly, was McSorley terminated for cause and not provided a hearing pursuant to 30-A M.R.S.A. § 2633 or did McSorley's job terminate according to the terms of her contract?

### A. Town Manager Plan

Defendant first argues that because it never adopted a "Town Manager Plan" pursuant to 30-A M.R.S.A. §§ 2631-2639[7] that McSorley's

---

M.R. Civ. P. 56(h)(2).

[7]   The form of government provided in this subchapter shall be known as the "town manager plan" and, together with general law not inconsistent, shall govern any town in which the voters have adopted this plan at a meeting held at least 90 days before the annual meeting.

30-A M.R.S.A. § 2931(1) (1996). Thomas Richmond states in his Affidavit that none of the records of the Town of Carmel dating back to 1954, indicate that the Town of Carmel has adopted the Town Manager Plan either as set forth in the current statute, or prior Statute.

due process rights under §2633 were not violated.[8] Plaintiff, however, has produced 1950 town records showing that the Town of Carmel, acting under R.S. ch. 80 § 16 had a town manager.[9] Defendant has not produced any evidence that the town later voted not to have a town manager.

---

8. 30-A M.R.S.A. § 2633 provides:

**1. Term.** The town manager shall hold office for an indefinite term unless otherwise specified by contract. . . .
**3. Removal Suspension.** The selectmen may remove or suspend the town manager for cause in accordance with the following procedures.
**A.** The selectmen shall file a written preliminary resolution with the town clerk stating the specific reasons for the proposed removal. A copy of that resolution shall be delivered to the manager within 10 days of filing.
**B.** Within 20 days of receiving the resolution, the manager may reply in writing and request a public hearing. . . .

30-A M.R.S.A. § 2633 (3) (1996).

9. R.S. ch. 80. § 16 provides:

A vote of a town to employ a town manager for itself and not in union with one or more other towns shall persist in full force until revoked at any legal special town meeting held at least 60 days before any annual town meeting.

R.S. ch. 80 § 16 (1944).

The earlier statutes were not repealed, only amended.[10] The starting point of statutory interpretation is the language of the statute. Cummings v. Town of Oakland, 430 A.2d 826, 829 (1981). "It will not be inferred that the Legislature, in revising and consolidating the laws, intended to change their policy unless such an intention be clearly expressed." Muniz v. Hoffman, 422 U.S. 454, 470. (1975) (citations omitted). The 1957 Amendment changed the wording from "may vote to employ a town manager" to "may adopt a town management form of government."[11] The 1969 revision simply named the town management

---

10. R.S. 1954 ch. 91 §169 provides:

Any town at the annual town meeting . . . may vote to employ a town manager or to form a union with one or more other towns . . . . A vote of a town to employ a town manager for itself and not in union with one or more other towns shall persist in full force until revoked at any legal special town meeting held at least 60 days before any annual town meeting. R.S. ch. 80, § 16 (1944).

R.S. ch. 91 § 169 (1954).

11. 1957 ch. 405 §41 provides that "A town may adopt the town manager form of government at a meeting held at least 60 days before the annual meeting."

form of government the "Town Management Plan."[12] In order to give the language of the statute meaning, and to follow the clear Legislative intent, this Court concludes that the Legislature only revised the statutes and did not intend for towns that had already voted to hire a town manager under prior statutes to specifically adopt a "Town Management Plan" form of government at town meeting. In fact, this intent is supported in (1) the title of the 1969 revision, "An Act Revising the General Laws Governing the Town Management Form of Government;" (2) 30-A M.R.S.A. § 2311 (3) which provides that once adopted it remains in effect until revoked; and (3) 30-A M.R.S.A. 2639 which provides: "All municipalities operating under the repealed Title 30, chapter 213, subchapter II are deemed to have made

---

12.   1969 ch. 438, **An Act Revising the General Laws Governing the Town Manager Form of Government, Sec. 1 R.S., T. 30 c. 213, sub.- C. IIA, additional,** Chapter 213 of Title 30 of the RS is amended by adding a new subch. II-A, to read as follows:

§ 2311. . . .The form of government provided in this subchapter shall be known as the "town manager plan" and shall, together with general law not inconsistent, govern any town, the voters of which have adopted this plan at a meeting held at least 60 days prior to the annual meeting. . . . 3. Duration once adopted. The town management plan remains in effect until revoked at a town meeting held at least 60 days prior to the annual meeting unless the voters of the town adopt a charter.

30   M.R.S.A. § 2311 (1969).

the adoption under section §2631, subsection 1, as of October 1, 1969."

Additional evidence that Carmel functions under the town manager form of government is found in the following: (1) Defendant's April 28, 1997 Memo to McSorley concerning her micro-managing complaint stated: "The 'Town Manager Plan,' described in state statutes gives you the authority to act as the Chief Administrative Officer. . . . We expect you to carry out those duties in accordance with state law, town ordinances and our policy. We do not intend to 'micro manage' your duties. We may offer constructive criticism . . .."; (2) the letter from William Livengood to the Town which stated:

> It is my understanding that the Town of Carmel operates under the statutory town manager form of government. . . . The Board of Selectmen may not modify this relationship by 'policy and procedures' which they adopt; any change in this format must be adopted by the town's legislative body, town meeting. (It is my understanding that the town meeting has not adopted any such modifications;

(3) The 1997 and 1998 employment contracts provided that McSorley would "perform the duties and functions set forth in applicable state statutes, including but not limited to 30-A M.R.S.A. Section 2636. . ..";  and

(4) the fact that the Policy and Procedures Manual is not an ordinance adopted by the town. Accordingly, this Court finds that because the Town of Carmel voted to hire a town manager in 1950, has continuously hired a

and because the amendments are only revisions which do not require a new vote each time the statute is amended, that the provisions set out in 30-A M.R.S.A. §§ 2631 et seq. apply to the Town of Carmel. Thus, this Court analyzes McSorley's termination issues in view of the fact it finds the town is acting under the "Town Management Plan" form of government pursuant to 30-A M.R.S.A. 2631 et seq.

B. Termination for cause or by contract

Plaintiff contends that instead of following Attorney Johnston's advice in November, 1998, they retained her as town manager and did not advise her that her status had changed nor gave her any written notice of termination until sometime prior to December, 1998 when they asked her to advertise for a new town manager. McSorley also stated in her deposition testimony that she was asked to stay on through the March meeting. McSorley Dep. at 36. McSorley's statement is not supported by the minutes of the meeting. The motion concerning the March date was not passed. On November 23 the selectmen passed a motion to keep McSorley on "through the hiring process."

Plaintiff argues that she is entitled to the full protection of procedural due process pursuant to 30-A M.R.S.A. § 2633 (3) because the extension was for "an indefinite term," so that no contract, written or

extension was for "an indefinite term," so that no contract, written or oral, ever established a definite term for McSorley's employment after November 6, 1998. A contract is to be interpreted to effect the parties' intentions as reflected in the written instrument, construed with regard for the subject matter, motive, and purpose of the agreement, as well as the object to be accomplished." V.I.P., Inc. v. First Tree Dev., LLC, 2001 ME 73 ¶3, 770 A.2d 95, 96 (citations omitted). A contract that provides for a definite term generally continues until the expiration of the term. Burnell v. Town of Kingfield, 686 A.2d 1072, 1073 (Me. 1996).[13] "A duration term need not specify a date or period of time; it can identify some event which will signal termination, even if it is not clear, ex ante, when that event will take place." H.L. Miller Machine Tools, Inc. v. Acroloc Inc., 679 F. Supp. 823, 825 (C.D. Ill. 1988) (citing First Commodity Traders v. Heinold

_____

13. In Burnell v. Town of Kingfield, 686 A.2d 1072 (Me. 1996) our Law Court, citing H.L. Miller Machine Tools, Inc. v. Acroloc, Inc., 679 F. Supp. 823 (C.D. Ill. 1988) which held that the duration of an employment contract is definite if it is for a fixed period of time capable of measurement, indicated that an employment agreement ending when someone retires might be an ascertainable event, but because Burnell assumed she would take over the retiree's position, the contract was not a contract for a definite term.

Burnell v. Town of Kingfield, 686 A.2d 1072 (Me. 1996).

Commodities, 591 F. Supp. 812, 815-16 (1984).[14] In Buchanan v. Martin Marietta Corp., 494 A.2d 677, 679 (Me. 1995), the Court found an oral promise "through his retirement date in 1991" created a contract of employment for a definite term. Id. at 679. The term "through the hiring process" in issue in the case at bar is unambiguous and, accordingly, interpretation is a matter of law for the Court to decide. Burnell, 686 A.2d at 1073 (Me. 1996). Under the circumstances of this case where McSorley's contract which expired November 6, 1998 was not renewed and the Selectmen voted to keep her on through the hiring of a town manager,

---

14. The Seventh Circuit, in reversing the Illinois District Court's grant of summary judgment based on its finding that the contract in issue was terminable at will, found that the contract was for a definite term because it appeared the intention of the parties was to have the contract continue until the "happening of a specific event," breach of the contract. First Commodity Traders v. Heinold Commodities, 766 F.2d 1007, 1012 (7th Cir. 1985).

In R.J.N. Corp. v. Connelly Food Prod., Inc., 175 Ill. App.3d 655, 659, 125 Ill. Dec. 108, 529 N.E.2d 1184, 1187 (1st. Dist. 1988), the court found that "remain in effect for as long as Connelly serves Rich's customers" did not create a definite durational term because the termination of service of RJN's customers "cannot be considered as an 'objective event,' that would have had the effect of making the contract sufficiently definite in duration. Id. at 660.

The Court in Altrutech, Inc. v. Hooper Holmes, Inc., 6 F. Supp. 2d 1269 (D. Kansas 1998), however, in reviewing Illinois case law found that breach of contract is a definite terminable event. Id. at 1276.

this Court finds that "through the hiring process" is an ascertainable identifiable event. Plaintiff admits she stayed on after January 4, 1999 to assist the new town manager. Plaintiff has presented no evidence that she was terminated for cause during the 1998 contract or the time ending with the "hiring process."

Because the Court finds that the oral contract was for a definite term, 30-A M.R.S.A. § 2633 (1)[15] applies because the term "through the hiring process" is definite and specified by contract. Any extension of McSorley's 1998 "Employment Agreement" expired at the termination of the "hiring process." Accordingly, McSorley is not entitled to a hearing pursuant to 30-A M.R.S.A. § 2633 (3).

II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Although the Court finds that the employment agreement controls McSorley's due process rights under 30-A M.R.S.A. § 2633, that finding does not prevent the Court from considering her discrimination claims.

Where the intent of one party is in question, as is often the case with employment discrimination claims, the "court must be cautious about

---

15. The town manager shall hold office for an indefinite term unless otherwise specified by contract.

30-A M.R.S.A. § 2633 (1).

granting summary judgment." Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223 (2d Cir. 1994). Because in the current environment, employers rarely leave direct evidence of discriminatory intent, courts must look for circumstantial evidence which undercuts the employer's explanation for its actions. See id. at 1224. The Court must consider the facts in the light most favorable to the non-movant, but make no credibility determination or weigh any evidence. Reeves v. Sanderson Plumbing Prod. 530 U.S. 133, 121, 120 S.Ct. 2097, 147 L.Ed. 2d 105 (2000). Thus, any factual disputes must be resolved against the Town of Carmel. Panasonic Communications & Systems Co. v. State of Maine, 1997 ME 43, ¶ 10, 691 A.2d 190, 194.

It is unlawful employment discrimination "for any employer to fail or refuse to hire or otherwise discriminate against an applicant for employment because of race or color, sex, physical or mental disability, religion, age, ancestry or national origin, because of the applicant's previous assertion of a claim or right under former Title 39 or Title 39-A or because of previous actions taken by the applicant that are protected under Title 26, chapter 7, subchapter V-B . . .." 5 M.R.S.A. § 4572 (1)(A)

(1989 & Pamph. 2000).[16] When interpreting MHRA, it is appropriate to refer to federal law interpreting Age Discrimination in Employment Act (ADEA). French v. Bath Iron Works, 45 F.Supp. 2d 69, 73 (D. Me. 1999).

## A. Count I - Age Discrimination

To establish a prima facie case of age discrimination McSorley must present evidence showing that:

1. The Plaintiff was over the age of 40,
2. Her work was sufficient to meet her employer's legitimate expectations,
3. Her employer took adverse action against her, and
4. The employer sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills.

Mesnick v. General Electric Co., 950 F. 2d 816, 823 (1st Cir. 1991).

McSorley conceded at oral argument that no one told her she was being terminated because of her age. McSorley's evidence to support her age discrimination claim primarily consists of: (1) the fact the town hired a younger male and paid him more than she was receiving after his first year as town manager; (2) her Statement of Material Fact ("PSMF") #15

---

16. Plaintiff must "present sufficient evidence to raise an inference that her protected activity was the likely reason for the adverse action and must show that her employer was aware she was engaged in the protected activity." Bowen v. Department of Human Services, 606 A.2d 1051, 1054 (Me. 1992) (citations omitted).

stating: "there were indications that her age was the reason for her termination." For example, the selectmen continually found fault with her work and pressured her to do extra work, including preparing for and attending workshops once a week in addition to the regular weekly selectmen's meetings. McSorley Deposition at 44 - 47; (3) PSMF #16 stating that "In an open meeting, Douglas Small told Glennis McSorley that she wasn't acting normal anymore," McSorley Dep. at 48;[17] (4) PSMF #20 stating that "[i]n either 1997 or 1998, John Luce asked Glennis McSorley how old she was, and whether she had ever considered retiring, Luce Dep. at 9; and (5) PSMF #28 stating: "At selectmen's meetings, it was discussed that Glennis McSorley should obtain Medicare benefits and be taken off the town's health insurance." Small Dep. at 35. Defendant contends that the only evidence to support McSorley's age discrimination claim is the hiring of younger man (at a lower salary for the first year and a higher salary for the subsequent year) to replace her as Town Manager. Cited deposition testimony indicates the Selectmen were dissatisfied with McSorley's performance. Small Dep. at 23; Luce Dep. at 8, 22; Dep. Ex. 4, 5, 6, 7 & 8. Although McSorley worked as town manager for years, she

---

17. This comment is too ambiguous to raise a genuine issue of material fact even when combined with other statements.

has presented no evidence that her recent job performance was sufficient to meet the Selectmen's legitimate expectations. Accordingly, Plaintiff has failed to meet requirement #2, and the Court grants Defendant's Motion for Summary Judgment as to the age discrimination claim.

### B. Count II - Sex Discrimination

Plaintiff also claims she was discriminated against because of her sex. An employee alleging sex discrimination must first establish a prima facie case by showing that: (1) she belonged to a protected class, (2) she performed her job satisfactorily, (3) her employer took an adverse employment decision against her, and (4) her employer continued to have her duties performed by a comparably qualified person. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st. Cir. 2000).

To support her sex discrimination claim McSorley states a man was hired and, although the Town paid him less the first year, it paid him more than she was being paid in his second year of employment. McSorley also states that sometime between 1995 and 1997 Selectman, Jeffrey McGown, got irate on a workshop night and stated: "if you were a man, I'd poke you. And I stood up and said, go to it. But he didn't." McSorley Dep. at 53. McGown was not a selectman when the Selectmen did not renew her contract. McSorley Dep. at 53, 54. "Stray remarks by non-decision-

makers or by decisionmakers . . . are rarely given great weight, particularly if they were made temporally remote from the date of decision." See Price Waterhouse v. Hopkins, 490 U.S. 228, 277, 109 S.Ct. at 1804, 104 L.Ed. 2d 268 (1989). This remark, made at the latest in 1997 by one not in office in 1998 - 1999, is not given great weight.

Selectman Small's statement that "If you were a man, one or the other of us would be on our backs on the floor," was in response to McSorley's remark, "If I was a man, you wouldn't be talking that way to me." Small Dep. at 39. These statements do not present sufficient direct or circumstantial evidence to survive summary judgment.

Although the Court finds that McSorley belongs to a protected class and that the town took an adverse employment decision against her when it did not renew her contract, McSorley still has not met the second element because she has produced no evidence to rebut Defendant's allegations that she was not satisfactorily performing her job. McSorley has also presented insufficient evidence as to McSorley's and Richmond's job qualifications.

### III.    Count III - Maine Whistleblowers' Protection Act

McSorley next claims that the town retaliated against her because she insisted the Selectmen were overstepping her statutory authority

pursuant to 30-A M.R.S.A. § 2636 in violation of the Maine Whistleblowers' Protection Act. "Section 4572(1)(A) of the MHRA, makes it illegal for an employer to discriminate against an employee in retaliation for the employee's exercise of rights under the Maine Whistleblowers' Protection Act (MWPA), 26 M.R.S.A. §§ 831-840. The MWPA, in turn, protects an employee from discrimination when he has complained to the employer in good faith about a workplace-related condition or activity that he reasonably believes is illegal, unsafe, or unhealthy." Higgins. v. New Balance Shoe, Inc., 194 F. 3d 252, 261 (D. Me. 1999). Neither state nor federal law requires that the reported condition, activity, or practice actually be unsafe or illegal; under either scheme, an employee's reasonable belief that it crosses the line suffices, as long as the complainant communicates that belief to his employer in good faith." Id. at 262.

Claims under MWPA are analyzed under the framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See DiCentes v. Michaud, 719 A.2d 509, 514 (Me. 1998). To establish a prima facie case, McSorley must show (1) that she engaged in a protected activity, (2) that her employer thereafter cashiered her, and (3) that there was a causal nexus between the protected activity

and the adverse employment action. <u>Bard v. Bath Iron Works Corp.</u>, 590 A.2d 152,154 (Me. 1991). Here, McSorley primarily claims violations because the Selectmen "micro-managed" her performance by insisting on hiring the office personnel and interfering with activities for which the town manager has statutory authority.[18] The May 3, 1995 letter from the Maine Municipal Association ("MMA") to Selectman Bowers, concerning its review of the "Town of Carmel Policy and Procedures Manual," stated a flaw in the authority it provided Selectmen because it "is my understanding that the Town of Carmel operates under the statutory town manager form of government. Under the statutory "Town Manager Plan" it is the <u>Town Manager</u> who ". . . shall appoint, supervise, and control all town officials whom the municipal officers are required by law to appoint . . .." (McSorley Dep. at 20, 21; Dep. Ex. 9).[19] McSorley states "there are

---

18. Q. Sir, you do agree that there were times that Glennis said that that was her authority not the selectmen's authority.
A. I do agree with that, yes. . . .

Phillips Dep. at 9.

19. 30-A M.R.S.A. § 2636 (2) provides that the town manager "[i]s responsible to the selectmen for the administration of all departments and offices over which the selectmen have control. Paragraph 5 provides the town manager "[s]hall appoint, subject to confirmation by the selectmen, supervise and control the heads of departments under the control of the selectmen when the department is not headed by the town

indications here from the attorney at MMA that several errors were inconsistent with state law . . . They were taking those powers upon themselves." McSorley Dep. at 55 - 56.[20] John Luce agreed that there were discussions about her powers versus the selectmen's powers in terms of managing town affairs. Luce Dep. at 13. Selectmen Small admitted that authority problems existed for at least ten years. Small

---

manager under subsection 4. Paragraph 6 provides:

> Unless otherwise provided by town ordinance, shall appoint, supervise and control all town officials whom the municipal officers are required by law to appoint, except members of boards, commissions, committees and single assessors; and appoint, supervise and control all other officials, subordinates and assistants, except that the town manager may delegate this authority to a department head and report all appointments to the board of selectmen.

30-A M.R.S.A. § 2636 (2), (5) & (6) (1996).

20. As Road Commissioner "I was not allowed to go ahead and do things at my discretion. Everything had to be written, brought to them for approval. If it wasn't approved, it had to be changed and brought back to them. . . .It occurred weekly during the time that I was town manager. McSorley Dep. at 55 - 56. "I am not saying it was illegal, but I was the road commissioner, not the five selectmen. Id. at 58.
Q. Do you have any other specific examples?
A. Like I mentioned, hiring people. I just couldn't go ahead and hire anybody to do anything without their sanction.
Q. And why is the Selectmen act of requiring you to get approval of hiring illegal?
A. It is a duty of the town manager under statute.

Dep. at 22.

Viewing the evidence most favorable to McSorley and discarding Defendant's evidence that a jury would not have to believe, this Court finds that McSorley has established a prima facie case of a violation of the MWPA. Under McDonald-Douglas, after the employee establishes a prima facie case of a violation of the MWPA, the employer has the burden of production to present a legitimate, nonretaliatory reason for the discharge. Here, the town has produced the legitimate nondiscriminatory reasons that: (1) the Selectmen had problems with her performance as town manager and (2) that her employment agreement ended by its own terms. Non-renewal, however, can be an adverse employment action.

McSorley must now show that the town's proffered reason is pretextual and that retaliation prompted her non-renewal. See Mesnick, 950 F.2d at 827. This Court finds that in this town manager situation, the continued authority conflict raises a genuine issue of material fact for a factfinder as to whether the authority conflict or poor performance was the underlying force leading to nonrenewal. Accordingly, Defendant's Motion for Summary Judgment on the MWPA is denied.

The entry is:

Plaintiff's Motion for Partial Summary Judgment (Count IV) is

DENIED.

Defendant's Motion for Partial Summary Judgment (Count IV) pursuant to Rule 56(b) is GRANTED.

Defendant's Motion for Summary Judgment is GRANTED as to Counts I and II, and DENIED as to Count III.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: Mar 30, 2001

Hon. Francis C. Marsano,
JUSTICE, SUPERIOR COURT

Date Filed __1/21/2000__ _____PENOBSCOT_____ Docket No. __CV-2000-17__
County

Action _____CIVIL - DAMAGES'_____

**ASSIGNED TO JUSTICE FRANCIS C. MARSANO**

GLENNIS A. MCSORLEY vs. INHABITANTS OF THE TOWN OF CARMEL

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| GILBERT LAW OFFICES<br>P O BOX 2339<br>BANGOR MAINE 04402 2339<br>BY: Arthur J. Grief, Esq. | BERNSTEIN SHUR SAWYER & NELSON<br>P O BOX 5057 - 146 Capitol Street<br>AUGUSTA ME 04332-5057<br>BY: Lee K. Bragg, Esq.<br>Joseph Hahn, Esq. |

| Date of Entry | |
|---|---|
| 1/24/00 | Complaint filed. |
| 1/24/00 | Case File Notice Postcard forwarded to Plaintiff's Counsel. |
| 2/7/00 | Officer's Return of Service filed (s.d. 2/2/2000 by Thomas Richmond, Town Clerk) |
| 2/22/00 | Answer and Affirmative Defenses filed by Defendant. |
| 2/23/00 | Scheduling Order filed. Discovery Deadline is November 1, 2000, (Marsano, J). Specially Assigned Justice.<br>Copy forwarded to attorneys of record. |
| 3/14/00 | Jury Demand filed by Plaintiff. Jury Trial Fee of $300.00 paid. |
| 5/26/00 | Notification of Discovery Service filed by Defendant, First Request for Production of Documents. |
| 6/28/00 | Plaintiff's First Request for Production of Documents filed. |
| 6/28/00 | Plaintiff's Response to Defendant's First Request for Production of Documents filed. |
| 6/28/00 | Notification of Discovery Service filed by Plaintiff: Plaintiff's First Request for Production of Documents; Plaintiff's Response to Defendant's Request for Production of Documents. |
| 8/28/00 | Notification of Discovery Service filed by Defendant, Response to Plaintiff's First Request for Production of Documents. |
| 10/6/00 | Consent Motion to Enlarge Discovery filed by Defendant. |
| 10/6/00 | Notification of Discovery Service filed by Defendant, Notice of Deposition of Glennis A. McSorley. |